United States District Court
Southern District of Texas
**ENTERED**
September 02, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KENNETH M.,[1]<br><br>*Plaintiff,*<br><br>v.<br><br>KILOLO KIJAKAZI,[2]<br>Acting Commissioner of Social<br>Security,<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>Case No. 4:20-CV-01227 |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Kenneth M. ("Plaintiff") filed this suit seeking judicial review of the denial of disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. ECF Nos. 19, 20. Having reviewed the motions, record, and the applicable law, the Court

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

grants Plaintiff's motion, and denies Defendant's motion.

## I.     BACKGROUND

At the time of the hearing, Plaintiff was 62 years old, R. 37,[3] and had completed two years of community college. R. 135. Plaintiff worked as a medical x-ray technician and radiologist coder, R. 256, but has not worked since September 30, 2012, due to his impairments. R. 19, 36, 239.

On December 8, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income under Title II of the Act. R. 214–20. He based[4] his application on obesity, right knee osteoarthritis, and a left inguinal hernia.[5] R. 214–20. The Commissioner denied his claims initially, R. 50–58, and on reconsideration, R. 60–69.

A hearing was held before an Administrative Law Judge ("ALJ"). R. 32–49. An attorney represented Plaintiff at the hearing. R 33. Plaintiff and a vocational expert testified at the hearing. R. 32–49. The ALJ issued a decision denying

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 13.

[4] The relevant time-period is September 30, 2012—Plaintiff's alleged onset date—through September 30, 2018—Plaintiff's last insured date. R. 19. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014).

[5] An inguinal hernia is "a hernia at the inguinal region," which involves either "the abdominal wall between the deep epigastric artery and the edge of the rectus muscle," or "the internal inguinal ring and passes into the inguinal canal." STEDMAN'S MEDICAL DICTIONARY 405500, Westlaw (database updated Nov. 2014)).

Plaintiff's request for benefits. R. 14–31.[6] The Appeals Council denied Plaintiff's

request for review, thus upholding the ALJ's decision to deny disability benefits and

supplemental security income. R. 1.

Plaintiff filed this civil action, ECF No. 1, challenging the ALJ's analysis and

seeking remand. Pl.'s MSJ, ECF No. 19. Defendant opposes Plaintiff's motion,

arguing that substantial evidence supports the ALJ's decision. Def.'s MSJ, ECF No.

20 at 6–26.

## II.   STANDARD OF REVIEW

The Act provides for district court review of any final decision of the

Commissioner that was made after a hearing in which the claimant was a party.

42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript
> of the record, a judgment affirming, modifying, or reversing the

---

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step four. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of September 30, 2012, through her date last insured of September 30, 2018. R. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: right knee osteoarthritis, left inguinal hernia, and obesity (20 C.F.R. 404.1520(c)). R. 19. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). R. 20. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant was limited to occasionally climbing ramps and stairs. R. 21. He could never climb ladders, ropes, or scaffolds and was limited to occasional stooping, kneeling, crouching, crawling, and balancing. R. 21. The claimant needed to avoid all exposure to unprotected heights and hazardous machinery. R. 21. At step four, the ALJ determined that through the date last insured, the claimant could perform his past relevant work as a radiologist coder as it is generally performed. R. 26. Since the ALJ found that the claimant was not disabled at step four, the ALJ did not conduct a step five analysis.

decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether the decision is supported by substantial evidence on the record and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). Substantial evidence is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *1 (S.D. Tex. Nov. 30, 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 555

(5th Cir. 1995)). A reviewing court may not reweigh the evidence in the record, try issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Id.*

However, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. A finding of no substantial evidence is appropriate only if no credible choices or no medical evidence exists to support the decision. *See Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that he is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr*, 2012 WL 6020061, at *2. The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff makes three arguments in support of his request that this Court vacate the Commissioner's decision and remand. First, Plaintiff contends that the ALJ

failed to consider all the evidence regarding Plaintiff's knee impairment. ECF No. 19 at 6–20. Plaintiff also argues that the ALJ failed to incorporate all his limitations in the hypothetical questions posed to the vocational expert, specifically his use of a cane. *Id.* at 24–26. Next, Plaintiff asserts that the ALJ erred in finding he could perform his past work as a radiologist coder. *Id.* at 21-24. The Government responds that the ALJ properly considered the evidence regarding Plaintiff's knee impairment, included all Plaintiff's limitations in the hypothetical questions, and properly relied on the vocational expert's testimony regarding Plaintiff's capacity to perform his past work, committing no error. ECF No. 20 at 4, 17.

## A. The ALJ Properly Considered All the Evidence.

Plaintiff argues "at step three," the ALJ failed "to fully consider all of the evidence; specifically his severe degenerative changes in his right knee" and "use of a cane." ECF No. 19 at 5.[7] Defendant responds that the ALJ properly considered the evidence in determining Plaintiff's RFC for a modified range of sedentary work. ECF No. 20-1 at 4.

Between the third and fourth steps of the sequential analysis, the ALJ must decide the claimant's RFC, which is defined as the most the claimant can still do

---

[7] Although Plaintiff argues that the ALJ erred at step three, he makes no arguments that his impairment equals one of the listings. Instead, the Court interprets this argument, as does the Defendant, as referring to the residual functional capacity ("RFC") determination that is made between steps three and four. *See, e.g.*, ECF No. 20-1 at 4.

despite his [or her] physical and mental limitations ... based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). When making the RFC determination, the ALJ must consider all medical opinions contained in the record. *Id.*; 42 U.S.C. § 405(b)(1). The new Social Security guidelines[8] require consideration of several factors, the most important of which are consistency and supportability. 20 C.F.R. § 404.1520c(b).[9] Under the new guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b).[10]

### 1. *The ALJ properly considered the medical evidence.*

Plaintiff argues that the ALJ failed to consider his testimony and the opinions of Dr. Kendrick, Dr. Vakil, and Dr. Keith concerning his right knee limitations. ECF No. 19 at 2–20. Plaintiff asserts that the ALJ decided to "pick and choose" the evidence as opposed to assessing the combination of Plaintiff's ailments as required. *Id.* at 20 (citing *Loza*, 219 F. 3d at 393).

---

[8] Because Plaintiff filed his claim on December 8, 2017, the ALJ was required to follow the new guidelines in conducting Plaintiff's RFC assessment. 20 C.F.R. § 404.1520c(a); *Winston*, 755 F. App'x at 402, n. 4.

[9] These factors include supportability, consistency, the physician's relationships with Plaintiff, the physician's specialization, evidence showing the medical source is familiar with the other evidence in the claim, or that the medical source understands the disability program's policies and evidentiary policies. *Id.*

[10]  The new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.).

"[T]he determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). To determine Plaintiff's RFC, the ALJ must consider the evidence and "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). While the ALJ must consider all the evidence, the regulations do not require the ALJ to include an "exhaustive point-by-point discussion." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that an ALJ must offer some explanation to support his conclusion but not an exhaustive list). Thus, what Plaintiff describes as selective picking-and-choosing is the ALJ considering the record and determining Plaintiff's limitations within his authority.

Contrary to Plaintiff's argument, the ALJ considered Plaintiff's testimony regarding his right knee in limiting Plaintiff to sedentary work. R. 22–24. While considering Plaintiff's limitations, the ALJ explained that sedentary work incorporated Plaintiff's subjective complaints concerning chronic right knee pain. R. 24. The ALJ also discussed Plaintiff's testimony concerning his pain medication,

his functional limitations[11] and daily activities.[12] R. 22. The ALJ found Plaintiff's testimony was "not entirely consistent with the medical evidence." R. 22. In particular, the ALJ noted a six-year gap in treatment for the right knee,[13] found Plaintiff's testimony concerning his limitations inconsistent with the record, and concluded that Plaintiff did not have the type of medical treatment one would expect for a totally disabled individual. R. 22, 24. *Quintanilla v. Astrue*, 619 F. Supp. 2d 305, 321 (S.D. Tex. 2008) ("The Fifth Circuit recognizes that an ALJ may rely on lack of treatment as evidence that an applicant's subjective complaints are not credible.").

Similarly, the ALJ found Dr. Kenrick's and Dr. Keith's opinions unpersuasive and inconsistent with the record. R. 25. Dr. Kendrick treated Plaintiff for his right

---

[11] The ALJ found that, regarding functional limitations, Plaintiff indicated he could sit less than two hours and stand/walk less than two hours total during an eight-hour workday, could not crawl or climb ladders, and needed to switch positions throughout the day.  R. 22.

[12] Regarding Plaintiff's daily activities, the ALJ noted that Plaintiff testified that his girlfriend performed the household chores, although he could shop at the grocery store with the use of motorized card, as well as attending Masonic Lodge meetings with the assistance of the elevator. R. 22.

[13] When examining the treatment records, the ALJ noted that Plaintiff had not received any follow-up treatment to his right knee after the cortisone injection in February 2012 until July 2018. R. 22. The ALJ observed that, in 2012, physical examinations revealed the right knee had normal appearance with slight tenderness but full range of motion, normal strength, normal reflexes, and intact sensation. R. 22 (referencing R. 314). Following Plaintiff's six-year gap in treatment, in 2018, Plaintiff complained of progressive right knee pain and symptom aggravation when walking. R. 22 (referencing R. 336–39). The right knee exam at this time, however, revealed normal appearance with tenderness in lateral joint line and medial joint line with full range of motion and normal strength. R. 22 (referencing R. 336–39). Following this exam in 2018, the ALJ found that Plaintiff did not receive any additional treatment for right knee osteoarthritis. R. 23.

knee in July 2018,[14] and opined that Plaintiff was "completely disabled due to his knee condition." R. 22 (referencing R. 339). The ALJ found the record did not support Dr. Kendrick's opinion considering the number of records documenting normal findings. R. 25. Additionally, the ALJ noted that Dr. Kendrick only examined Plaintiff one time. R. 25.

In considering Dr. Keith's opinion,[15] the ALJ found it unpersuasive as it was not well supported. R. 25. The ALJ also noted it was prepared well after the date last insured and did not state it related back to the alleged onset date or date last insured. R. 25. Dr. Keith's analysis[16] stated Plaintiff could not even perform "low stress" jobs. R. 25 (referencing R. 340–44). Dr. Keith's opinion consisted of conclusory check-box findings without further explanation, which the ALJ may find unpersuasive and not well supported. *Conner*, 2020 WL4734995, at *7.

In contrast, the ALJ found Dr. Vakil's opinion persuasive. R. 25. Dr. Vakil is an internal medicine consultative examiner who opined that Plaintiff could move

---

[14] Dr. James Kendrick examined Plaintiff after complaints of right knee pain in July 2018. R. 336–39. The examination revealed normal appearance with crepitus, tenderness in lateral joint line and medial joint line, full range of motion and normal strength, normal reflexes, and intact sensation. *Id.* A right knee x-ray revealed advanced degenerative changes. *Id*.

[15] Dr. Keith treated Plaintiff beginning in March 2019. R. 345 (3/5/19); R. 340–44 (4/20/19); R. 11–13 (7/24/19).

[16] Unlike Dr. Kendrick, Dr. Keith conducted a function-by-function evaluation of Plaintiff. R. 340–44. Dr. Keith assessed Plaintiff could sit less than two hours and stand/walk less than two hours during an eight-hour workday, could never lift 10 pounds or more, and could not perform any postural maneuvers. R. 340–44. Dr. Keith also opined that Plaintiff needed the use of a cane. R. 340–44.

around the house with the help of a walking cane, perform some housework, and drive short distances. R. 331–35. Dr. Vakil also surmised that osteoarthritis most likely caused Plaintiff's pain. R. 333. The ALJ found the record supported Dr. Vakil's opinion regarding Plaintiff's limitations, in particular concerning Plaintiff's cane usage. R. 25. Therefore, Plaintiff's argument that the ALJ failed to consider these medical opinions is without merit.[17]

While Plaintiff contends that the ALJ erred because he did not find this evidence persuasive, courts afford great deference to the ALJ's assessment of credibility. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). The ALJ explained the persuasiveness of each medical opinion and how he arrived at these conclusions, which is in accordance with the new guidelines. "Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it." *Foster*, 2011 WL 5509475, at *6 (citing *Johnson*, 864 F.2d at 343–44).

---

[17] The ALJ also found Dr. Ward's, Dr. Herman's, and Dr. Braverman's opinions somewhat persuasive. R. 26. Each of the medical consultative examiners performed function-by-function analyses of Plaintiff. (Dr. Ward's examination: R. 55–58 (4/26/18); Dr. Herman's examination: R. 64–69 (10/11/18); Dr. Braverman's examination:  R. 75–81 (11/3/18)). The ALJ found these opinions somewhat persuasive concerning assigned postural limitations, as they were mostly consistent with the overall objective evidence. R. 26. But the ALJ found that Plaintiff's subjective complaints, imaging results, and obesity supported further limitations for Plaintiff's knee. R. 26. Therefore, the ALJ found that Plaintiff's limitations reduced him to a sedentary exertional level. R. 26.

### 2. *The ALJ properly considered only the evidence from the time-period.*

Plaintiff argues that the ALJ erred because he found Dr. Keith's evaluation unpersuasive in part due to it being outside the relevant time frame. ECF No. 19 at 19. Defendant counters that the ALJ properly discounted this opinion because it did not state that it related back. ECF No. 20-1 at 11.

An ALJ must only consider evidence during the relevant time frame—from Plaintiff's alleged onset date through Plaintiff's last insured date—unless the retrospective medical opinion relates back to the claimed period of disability. *Loza*, 219 F.3d at 396 (finding medical diagnoses of PTSD relating back to period of disability). For an ALJ to find the retrospective opinion relates back to the insured period, it must refer to the relevant period of disability and not simply express an opinion about Plaintiff's current status. *McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) ("Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status.").

Dr. Keith's performed his function-by-function analysis on April 20, 2019, more than a year after the last insured date of September 30, 2018. R. 340–44. He first examined Plaintiff only six months after the last insured date. Plaintiff argues that his opinion corroborates Dr. Kendrick's report and x-ray and is consistent with Dr. Vakil's opinion that Plaintiff suffers from a severely arthritic right knee. ECF

No. 19 at 20 (citing R. 331–33). The April 2018 x-ray documented tri-compartment osteoarthritis in the right knee. *Id.* (citing R. 335). Although nothing in Dr. Keith's opinion suggests that it relates back to the period of insured, Plaintiff pointed to contemporaneous records that indicate his impairment existed before the date of last insured.

As recounted above, the ALJ found Dr. Keith's opinion was unpersuasive because it was not well supported. R. 25. He also found that it was prepared well after the date of last insured and did not state that it related back. R. 25. Although his opinion that Plaintiff had osteoarthritis and needed a cane are consistent with other evidence from the relevant time-period, Dr. Keith's postural and other limitations are not. Conflicts in the evidence are for the ALJ to resolve. *Brown*, 192 F.3d at 496. Accordingly, the ALJ appropriately discounted this conflicting conclusory opinion that he found not well supported that also was outside the relevant time-period. *Lucky v. Astrue*, 458 F. App'x 322, 327 (5th Cir. 2011) (affirming ALJ's decision to ignore medical opinion outside relevant period when the only evidence the opinion related back was Plaintiff's testimony which was inconsistent with contemporaneous records).

### 3. The ALJ incorporated Plaintiff's cane usage when he limited Plaintiff to sedentary work.

Finally, Plaintiff claims the RFC lacks substantial evidence because the ALJ did not consider Plaintiff's required use of a cane. ECF No. 19 at 5. This argument is without merit.

When determining whether a hand-held assistive device is medically necessary, an ALJ must consider "the particular facts of a case" based on the evidence of the need for the device and the circumstances for which it is needed. *Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020). The ALJ repeatedly noted Plaintiff's need for the cane to ambulate. R. 22–25. In considering the facts of the case, the ALJ observed that Plaintiff used a cane at his examinations and testified to still needing the cane. R. 21–26. The ALJ stated that Dr. Vakil assessed that Plaintiff needed the cane. R. 25. The ALJ clarified that, although the RFC did not include a "limitation that required the use of a cane, limiting [Plaintiff] to a sedentary exertional level with restrictive postural and environmental limitations accounted for this observation." R. 25.

Moreover, sedentary work[18] under the regulations does not preclude the use of a handheld device. The regulations stipulate that even someone who uses a

---

[18] The Social Security regulations define sedentary work in § 404.1567(a) as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

*medically required*[19] hand-held device may be able to perform the minimal lifting and carrying requirements of sedentary work. SSR 96-9P, 1996 WL 374185, at *7 (emphasis added). The use of a single point cane does not create an inability to ambulate.[20] The ALJ provided additional restrictions to accommodate Plaintiff's cane usage, noting that Plaintiff could never climb ladders, ropes, or scaffolds, and was limited to occasional stooping, kneeling, crouching, crawling, and balancing. R. 21. Courts in the Fifth Circuit have recognized that sedentary work with additional postural restrictions allows for the use of a cane.[21]

---

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. 20 C.F.R. § 404.1567.

SSR 83-10 elaborates on the definition of "sedentary work" and explains that "standing or walking should generally total no more than about 2 hours of an 8-hour workday and sitting should generally total approximately 6 hours of an 8-hour workday." *Myers v. Apfel*, 238 F.3d 617, 610 (5th Cir. 2001).

[19] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for the device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7. Multiple medical professionals in the record document Plaintiff's need for a cane. R. 331–333 (Dr. Vakil opining that Plaintiff needed a cane to walk around the house on 4/2/18); R. 53–56 (Dr. Ward opining that Plaintiff needed single point cane to ambulate on 4/26/18); R. 265 (Disability Report documenting Plaintiff's need for a cane on 7/5/18); R. 67 (Dr. Herman explaining Plaintiff needs a single point cane to ambulate on 10/11/18); R. 76 (Dr. Braverman reporting Plaintiff's need for a cane due to right knee pain on 11/3/18); R. 11 (Dr. Keith documenting Plaintiff's difficulty walking while using a cane on 7/24/19).

[20] "A single cane is not sufficient, under the regulations, to equal an inability to ambulate." *Maddox v. Colvin*, No. 14-1826, 2015 WL 3826280, at *18 (S.D. Tex. June 18, 2015); *see Weary v. Astrue*, 288 F. App'x 961. 967 (5th Cir. 2008) (determining that "reliance on a single cane does not limit the function of both extremities, as would reliance on a walker, two crutches or two canes as required under § 1.00B3b(1)").

[21] *Reese v. Saul*, No. 4:19-CV-2787, 2020 WL 6804513, at *3 (S.D. Tex. Nov. 3, 2020) (finding RFC of sedentary work but Plaintiff never could never crawl, climb ropes, ladders, or scaffolds

Here, although the ALJ did not include the assistive device in the RFC, he explained that he incorporated that limitation in the choice of sedentary work combined with other postural limitations. R. 25. Accordingly, the ALJ did not err.

**B. The ALJ's Hypothetical Questions to the Vocational Expert Accurately Encompassed Plaintiff's Limitations.**

    *1.* ***The ALJ included every recognized limitation in his questions to the vocational expert.***

In the hypothetical questions to the vocational expert, the ALJ must reasonably incorporate all of Plaintiff's recognized limitations or provide Plaintiff with a "real opportunity" to correct any defects. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (remanding ALJ's finding of non-disability when hypothetical questions did not include every limitation, and no opportunity was provided for Plaintiff to correct the deficiencies). However, an ALJ need only include those claimed disabilities the ALJ recognizes and finds supported. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming ALJ's decision to omit questions concerning limitations the ALJ did not recognize).

In the hypothetical questions to the vocational expert, the ALJ incorporated

---

properly included limitations for Plaintiff's cane); *A.D.V. v. Social Sec. Admin.*, No. 14-cv-3223, 2016 WL 3512033, at *3 (W.D. La. Feb. 26, 2016) (finding that Plaintiff could perform sedentary work without additional restrictions because Plaintiff's cane use did not have "more than a slight impact" on ability to perform the full range of sedentary work.); *Montgomery v. Colvin*, No. 4:12-CV-574-Y, 2013 WL 5314410, at *9 (N.D. Tex. Sept. 20, 2013) (affirming ALJ's RFC of sedentary work with restrictions in climbing, stooping, kneeling, and crawling due to Plaintiff's need for a cane).

every limitation that he afforded Plaintiff in the RFC. R. 46–48.[22] These limitations

accounted for Plaintiff's decreased mobility due to his cane usage. Therefore, the

ALJ did not err in posing the hypothetical questions to the vocational expert.

### 2. If the ALJ erred in his vocational questions, then this error was harmless error.

If the ALJ erred when he omitted Plaintiff's cane from the hypothetical

question to the ALJ, any error was harmless. Harmless error exists when it is

inconceivable that a different administrative conclusion would have been reached

absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (affirming

ALJ's decision when error in assessing Plaintiff's credibility would not have

affected the outcome of the decision). Mistakes in the record will only be the basis

for remand if such errors would cast into doubt the existence of substantial evidence

to supports the ALJ's decision. *See Morris v. Bowen*, 865 F.2d 333, 335 (5th Cir.

1998) (affirming ALJ's decision when procedural improprieties did not eliminate

substantial evidence).

Plaintiff has failed to meet his burden to show that this misstatement would

---

[22] At the oral hearing, the ALJ addressed the following hypothetical question to the vocational expert: "If we had an individual of this person's age, education, and past work experience, limited to sedentary work as defined by the Social Security Administration but further could only climb ramps and stairs, never ladders, ropes, and scaffolds. Occasional stoop, kneel, crouch, crawl and balance, and should avoid all exposure to unprotected heights and hazardous machinery. Could such a person perform any of claimant's past work?" R. 47.

affect the outcome of the case. At the oral hearing, the ALJ afforded Plaintiff's counsel the opportunity to correct the deficiencies in the hypothetical question.[23] When Plaintiff's counsel has a real opportunity to correct any faults in the ALJ's questioning, courts have affirmed the ALJ's decision. *Wise v. Sullivan*, 101 F. App'x 950, 951 (5th Cir. 2004) ("[E]ven assuming, *arguendo*, that the administrative law judge's hypothetical was deficient in the respects urged on appeal, because [Plaintiff's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error.").

Accordingly, any error the ALJ made in omitting Plaintiff's cane from the hypothetical question to the vocational expert was harmless error.

## C. The ALJ's Error at Step Four Prejudiced Plaintiff and Requires Reversal.

The ALJ found that Plaintiff could perform his past relevant work as a radiologist coder as generally performed, consistent with the Dictionary of Occupational Titles ("DOT"), DOT 079.262-014, relying on the testimony of a vocational expert. R. 26.[24] Plaintiff claims his job was a composite position of

---

[23] The ALJ addressed Plaintiff's counsel following his questions to the vocational expert, asking "Any questions, Counsel?" R. 48. Plaintiff's Counsel responded "Your Honor. Your last hypothetical fits the facts in this case. I have no further questions." R. 48.

[24] The vocational expert testified that Plaintiff principally worked as a radiologist or a medical x-ray technician, found in the DOT at 078.362-026, and as a radiologist coder, found in the DOT at 079.262-014. R. 46–47. The vocational expert stated that under the DOT, a medical x-ray technician is a light skilled, SVP 7 occupation, and a radiologist coder is a sedentary, skilled position also with an SVP of 7. *Id*. However, he testified that Plaintiff performed these past

radiologist coder and x-ray technician and the ALJ improperly severed out the least demanding part of his work to make this finding. ECF No. 19 at 21. Defendant argues that the ALJ properly relied on the vocational expert testimony and DOT to find that Plaintiff was capable of performing his past relevant work as a radiologist coder. ECF No. 20-1 at 14. Based on the Court's review of the DOT, the provision on which the vocational expert relied does not exist.

The Dictionary of Occupational Titles ("DOT"), published by the United States Department of Labor, is a comprehensive listing of job titles, that details descriptions of requirements for each job to provide "standardized occupational information to support job placement activities." *Dictionary of Occupation Titles* at xv (4th ed. 1991). In Social Security cases, the ALJ routinely "takes administrative notice of job information contained in DOT when determining" whether a plaintiff is capable of performing past relevant work or "whether work exists in significant numbers in the national economy." *See Augustine v. Barnhart*, No. 1:00-CV-749, 2002 WL31098512, at *6 (E.D. Tex. Aug. 27, 2002) (citations omitted).

Issues have arisen when the vocational expert's testimony conflicts with the DOT's listing. *Id.* The Fifth Circuit has ruled that "the ALJ may rely on a vocational expert's testimony [that indirectly conflicts with the DOT] provided the record

---

positions at a medium exertional level. R. at 47. The vocational expert also claimed his testimony was consistent with the DOT to the ALJ. R. 47–48.

reflects an adequate basis for doing so." *Id.* (citing *Carey*, 230 F.3d at 146).[25] When a direct conflict exists, and the ALJ fails to explain or resolve the conflict, the probative value of the vocational expert's testimony is so lessened that a reversal and remand for lack of substantial evidence usually follows. *See Carey*, 230 F.3d at 145. Courts following *Carey* have clarified that an ALJ may nonetheless rely on a directly conflicting vocational expert's opinion, if the ALJ articulates a plausible reason for doing so that is susceptible to meaningful judicial review. *Farr*, 2012 WL 6020061, at *13 (remanding when ALJ failed to articulate a reason for relying on the vocational expert's testimony that directly conflicted with the DOT); *Augustine*, 2002 WL31098512, at *9–10 (remanding when ALJ's decision based on a vocational expert's testimony that directly conflicted with DOT was not supported by substantial evidence, collecting cases from other circuits, and noting the varying deference afforded in those holdings).

Here, the testimony did not conflict with the DOT, instead the vocational expert relied on a specific DOT provision that does not exist. The Court's search of

---

[25] When a conflict exists between a vocational expert's testimony and the DOT, the regulations require the ALJ to resolve this conflict before relying on the evidence to support a determination of decision that the individual is or is not disabled. SSR 00-4p, 2000 WL 1898704, at *4. This requirement includes both an affirmative responsibility to inquire about any conflict as well as resolving the conflict before relying on the testimony. *Graves v. Colvin*, 837 F.3d 589, 592–3 (5th Cir. 2016) (explaining that if the ALJ fails to undertake this responsibility, the ALJ has committed a procedural error). An ALJ's unawareness of the conflict does not excuse the procedural error. *Woods v. Barnhart*, 458 F.Supp.2d 336, 354 (S.D. Tex. 2006) (remanding when the ALJ failed to articulate a reason for relying on vocational expert's testimony when it conflicted with the DOT, despite the ALJ not being aware of the conflict in his decision).

the DOT did not find this DOT provision number or job description.[26] The Court did

not find any cases in this circuit that addressed this issue. In a Florida case, a

vocational expert likewise relied on the same non-existent DOT provision. The court

declined to engage in the *post hoc* rationalizations Defendant suggested, finding the

action must be upheld on the basis articulated in the ALJ's order. *Miller v. Colvin,*

No. 8:15-cv-2415-T-DNF, 2017 WL 677670, at *6 (M.D. Fla. Feb. 21, 2017) (where

ALJ found plaintiff could return to past relevant work as a medical coder-biller, DOT

079.262-14, which is not in the DOT, remanded for ALJ to clarify step four

finding).[27] Because the ALJ's decision must stand or fall on the reasons stated,

*Newton*, 209 F.3d at 455, it is not appropriate for this Court to substitute its opinion

for what the ALJ or vocational expert might have meant.

　　　　Even though a Plaintiff has the burden of showing he can no longer perform

his past relevant work, the ALJ has the obligation to develop a full and fair record.

*Ripley*, 67 F.3d at 557.  If the ALJ does not satisfy this duty, the resulting decision

---

[26]  This is not a case of a scrivener's error where the ALJ wrote cited to the wrong number when the vocational expert testified to the correct provision. See, e.g., Armin v. Astrue, No. SA CV 09-01125-VBK, 2010 WL 2384595, *1 n.1 (W.D. Cal. June 9, 2010) (finding substantial evidence supported finding plaintiff could perform past work when vocational expert testified to the correct number of a medical biller, but the ALJ identified a non-existent number, which the court found was a typographical error).

[27] *But see Snell v. Comm'r*, No. 6:12-cv-1542-Orl-22TBS, 2014 WL 631696, at *1-2, 8 (M.D. Fla. Feb. 18, 2014) (affirming ALJ's decision that plaintiff could perform past work of medical coder in reliance on vocational expert's testimony relying on the same DOT provision that does not exist, because Eleventh Circuit law permits the ALJ to resolve any conflict between the expert's testimony and the DOT in favor of the vocational expert, even though in this case the ALJ did not resolve any such conflict).

is not substantially justified. *Id*. Because the ALJ based the decision on a DOT provision that does not exist and found that Plaintiff could return to his past work, his rights have been substantially harmed. *Ealy v. Colvin*, No. 3:13-CV-409-TSL, 2014 WL 3928193, at *9 (S.D. Miss. Aug. 12, 2014) (explaining that when an ALJ's final decision relying on the conflicting vocational expert testimony hinges on Plaintiff's capacity to return to her previous work, then Plaintiff's rights have been "substantially and irrevocably harmed.").

Therefore, the Court finds it appropriate to reverse and remand for the ALJ to clarify his step four finding.

## V.    CONCLUSION

Therefore, it is **ORDERED** as follows: Plaintiff's motion for summary judgment is **GRANTED**; Defendant's motion for summary judgment is **DENIED**; the Commissioner's decision is **VACATED**; and this matter is **REMANDED** to the Commissioner to conduct further proceedings consistent with this opinion.

Signed at Houston, Texas, on September 2, 2021.

**Dena Hanovice Palermo**
**United States Magistrate Judge**